FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 26, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERIN WILSON, | No. 1:15-CV-03173-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 15, 16. Attorney D. James Tree represents Erin Marie Wilson (Plaintiff); Special Assistant United States Attorney Ellinor R. Coder represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on October 28, 2011, alleging disability since July 27, 2010, due to migraines, right shoulder pain, depression, low self-esteem, anxiety, posttraumatic stress disorder

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

(PTSD), and social anxiety.[1]  Tr. 161, 314-319, 432.  The protective filing date for the application was September 29, 2010.[2]  Tr. 20.  The application was denied initially and upon reconsideration.  Tr. 216-224, 227-233.  Administrative Law Judge (ALJ) Cheri L. Filion held a hearing on October 24, 2013, and heard testimony from Plaintiff and vocational expert Kimberly Mullinax.  Tr. 74-128.  The ALJ issued an unfavorable decision on March 13, 2014.  Tr. 29-33.  The Appeals Council denied review on July 31, 2015.  Tr. 1-4.  The ALJ's March 13, 2014, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on September 29, 2015.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 29 years old at the protective filing date.  Tr. 314.  The highest grade Plaintiff completed was the seventh in 1994.  Tr. 343.  Her work history included the jobs of cashier, janitor, laborer, and laundry matt attendant.  Tr. 326, 343.  Plaintiff reported she stopped working in 2009 because of her condition.  Tr.

---------------------

[1]Plaintiff had a prior application for SSI benefits, which resulted in an unfavorable hearing decision on July 27, 2010.  Tr. 129-143.  Plaintiff requested review of the decision by the Appeals Council, which was denied on September 22, 2011.  Tr. 144-150.  Plaintiff than requested the District Court review the ALJ decision, which affirmed the ALJ's decision.  Tr. 191-213.

[2]Because Plaintiff filed a new SSI claim within 60 days of the Appeals Council's order denying her request for review, her protective filing date for the new application became September 29, 2010, the date Plaintiff requested review by the Appeals Council.  Tr. 145.

ORDER GRANTING DEFENDANT'S MOTION . . . . - 2

342.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law *de novo*, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent her from

engaging in her previous occupations.  20 C.F.R. § 416.920(a)(4).  If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 13, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 29, 2010, the protective filing date.  Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairments:  remote history of distraction injury to right arm, status post right shoulder surgery, migraine headaches, degenerative disc disease of the cervical spine, neuralgia, major depressive disorder, anxiety disorder, and PTSD.  Tr. 22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 23.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of light work with the following restrictions:

> [S]he can frequently climb ramps and stair[s], but never climb ladders, ropes, and scaffolds.  She can frequently balance, stoop, kneel, crouch, and crawl.  Overhead reaching with the right upper extremity is limited to no more than occasionally, and she should avoid concentrated exposure to hazards.  She is limited to work with no public interaction.

Tr. 24-25.  The ALJ found that Plaintiff was not able to perform her past relevant work.  Tr. 32.

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of assembler, escort vehicle driver, and counter clerk. Tr. 32. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from Plaintiff's protective filing date, September 29, 2010, through the date of the ALJ's decision, March 13, 2014. Tr. 33.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh medical source opinions; (2) improperly applying res judicata; and (3) failing to make a proper determination regarding Plaintiff's credibility.

## DISCUSSION

### A. Medical Source Opinions

Plaintiff argues that the ALJ failed to properly consider and weigh the medical opinions expressed by Judith Harvey, M.D., and Kirk Strosahl, Ph.D. ECF No. 15 at 4-12.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the treating physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester*, 81 F.2d at 830. When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician. *Id.* at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

### 1. Judith Harvey, M.D.

On December 27, 2011, Dr. Harvey completed a Documentation Request for Medical or Disability Condition for the Washington Department of Social and Health Services (DSHS). Tr. 885-887. She stated that Plaintiff had PTSD, chronic right shoulder pain, social anxiety, and chronic headaches. Tr. 885. She stated that Plaintiff's increased anxiety limited her ability to interact with others and her right arm/shoulder injury limited her function. *Id.* She stated Plaintiff was unable to participate in work activities and activities related to preparing for and looking for work. *Id.* She stated that Plaintiff's lifting and carrying limitations were at the sedentary level, defined as "[a]ble to lift 10 pounds maximum and frequently lift or

carry such articles as files and small tools.  A sedentary job may require sitting, walking and standing for brief periods." Tr. 886.  She noted that Plaintiff was unable to drive due to anxiety.  Tr. 886.  She found Plaintiff's pain chronic, stable, and not amenable to further intervention, and she stated Plaintiff's anxiety may improve with therapy and allow Plaintiff to perform sedentary work.  *Id.*

The ALJ gave this opinion "little weight" because Dr. Harvey was not Plaintiff's treating provider for her psychological impairments, yet she focused on Plaintiff's anxiety and its effect on her residual functional capacity.  Tr. 28.  Additionally, the opinion was inconsistent with the treatment notes from Plaintiff's treating psychologist.  Tr. 28.  The ALJ also found that there were inconsistencies in the opinion, highlighting the limitation to sedentary work against the statement that Plaintiff could not perform any hours of work activity.  *Id.*  Additionally, the ALJ found that Dr. Harvey expressed a lack of confidence in providing a functional assessment in her June 13, 2012 questionnaire.  *Id.*

The ALJ's first reason for rejecting Dr. Harvey's December 2011 opinion, that it focused on psychological impairments and Dr. Harvey was not her treating psychologist, is legally sufficient.  The regulations direct the ALJ to consider both the nature and extent of the treatment relationship and the provider's specialty.  20 C.F.R. § 416.927(c)(2)(ii) ("if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain") and 20 C.F.R. § 416.927(c)(5)  ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").  Therefore, the ALJ did not error by highlighting that Dr. Harvey was not Plaintiff's treating psychologist.  Furthermore, the ALJ found that Dr. Harvey's opinion was inconsistent with the treating psychologist's contemporaneous treatment notes.  Tr. 28.  A treatment note from Dr. Strosahl

dated December 5, 2011, stated that "this patient seems to be managing her life situation overall quite well. . . Overall, her PTSD symptoms seem to be well in check and she is functioning at a very acceptable level in her roles as a parent and spouse." Tr. 888. This further supports the ALJ's determination that Dr. Harvey's opinion regarding Plaintiff's psychological limitations were entitled to lesser weight.

The ALJ's second reason for rejecting Dr. Harvey's December 2011 opinion, that there were internal inconsistencies within the opinion, is not a legally sufficient reason. The ALJ reasoned that Dr. Harvey's opinion limiting Plaintiff to sedentary work was inconsistent with her statement that she could not perform any hours of work activity. Tr. 28. However the record does not support the conclusion that Dr. Harvey's opinion was inconsistent. The question presented to Dr. Harvey was "Does this person have any limitations with lifting and carrying?" "If yes, this person has the following limitations:" to which Dr. Harvey checked the "Yes" box indicating that Plaintiff had limitations in lifting and carrying and checked the "Sedentary Work" box indicating that Plaintiff was limited to lifting ten pounds maximum. Tr. 885. Stating that Plaintiff had lifting restrictions consistent with the definition of sedentary work is not inconsistent with the statement that Plaintiff could not perform any hours of work activity. Therefore, the ALJ erred in her conclusion. However, this error was harmless considering the ALJ provided other legally sufficient reasons for rejecting Dr. Harvey's December 2011 opinion. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

The ALJ's third reason for rejecting Dr. Harvey's December 2011 opinion, that she expressed a lack of confidence in providing a functional assessment in a later opinion is legally sufficient. Dr. Harvey's June 2013 statement "I recommend an independent medical exam to determine ability to function. I do not do this sort of exam," Tr. 783, expressed a lack of confidence in her functional analysis and is a legitimate and specific reason to reject the opinion.

On June 13, 2012, Dr. Harvey completed a questionnaire addressing Plaintiff's functional abilities. Tr. 782-783. She noted that Plaintiff had limited abduction of the right shoulder to 20 degrees with no muscle wasting. Tr. 782. She noted that Plaintiff's narcotic medication caused her to be lethargic and unable to focus. *Id.* She noted that Plaintiff's injury to the right shoulder was stable and fixed with no improvement expected. Tr. 782-783. She stated that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, and noted that Plaintiff was unable to lift or file without pain. Tr. 783. She further stated that if Plaintiff were to work a 40-hour work week, she would anticipate Plaintiff missing four or more days per month due to pain. *Id.* She then ended her questionnaire by stating "I recommend an independent medical exam to determine ability to function. I do not do this sort of exam." *Id.*

The ALJ gave this opinion "little weight" again finding that Dr. Harvey lacked confidence in performing a functional assessment. Tr. 28. Additionally, the ALJ found that Dr. Harvey's statement that Plaintiff's limitations existed at this severity since March of 1987 showed that Dr. Harvey based her opinion on Plaintiff's self-reports because Dr. Harvey had no knowledge of Plaintiff's functional ability in 1987. Tr. 29.

As addressed above, the ALJ's reliance on Dr. Harvey's statement "I recommend an independent medical exam to determine ability to function. I do not do this sort of exam," Tr. 783, is a legally sufficient reason to question her confidence in her responses to the questionnaires.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

Additionally, A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti*, 533 F.3d at 1041. However, ALJ must provide the basis for her conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ explained the basis for her determination that Dr. Harvey's opinion was based on Plaintiff's self-reports, that Dr. Harvey had no way to ascertain knowledge of Plaintiff's impairments and the severity of the resulting limitations from 1987 to the first date Plaintiff was seen in her clinic in July 2007 by another provider and that she had no personal knowledge of Plaintiff's impairments and resulting limitations until she began seeing her in September 2011. Tr. 29, 782. The Court acknowledges that the ALJ erred in finding Dr. Harvey's first treatment of Plaintiff took place in June of 2013, however, this error is inconsequential to the ALJ's assertion of Plaintiff's lack of knowledge back to 1987. Therefore, the ALJ's reason for rejecting this opinion was legally sufficient.

### 2.    Kirk Strosahl, Ph.D.

On January 24, 2011, Dr. Strosahl completed a Psychological/Psychiatric Evaluation form at the request of DSHS. Tr. 423-426. He diagnosed Plaintiff with PTSD and bipolar II disorder. Tr. 424. He opined that Plaintiff had a severe[3] limitation in the abilities to understand, remember, and persist in tasks by following complex instructions of three or more steps and to communicate and perform effectively in a work setting with public contact. Tr. 425. He further opined that Plaintiff had a marked[4] limitation in the abilities to understand,

---

[3]A severe limitation is defined as the "inability to perform one or more basic work-related activities." Tr. 425.

[4]A marked limitation is defined as a "[v]ery significant interference." Tr. 425.

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

remember, and persist in tasks following simple instructions, to learn new tasks, to perform routine tasks without undue supervision, to communicate and perform effectively in a work setting with limited public contact, and to maintain appropriate behavior in a work setting.  *Id*.  Additionally, he opined that plaintiff had a moderate[5] limitation in the ability to be aware of normal hazards and take appropriate precautions.  *Id*.  Dr. Strosahl stated he would expect these limitations to be present at the above severity for one to five years.  Tr. 426.

The ALJ gave "little weight" to this opinion because it was inconsistent with contemporaneous treatment notes from Dr. Strosahl himself and other providers. Tr. 30.  Plaintiff did not challenge the ALJ's specific reasons for rejecting this opinion in her briefing.  *See* ECF No. 15.  The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief.  *See Carmickle*, 533 F.3d at 1161 n.2.

On January 2, 2013, Dr. Strosahl completed a second Documentation Request for Medical or Disability Condition from DSHS.  Tr. 889-891.  He stated that Plaintiff had severe chronic PTSD and chronic depression.  Tr. 889.  He stated that Plaintiff was unable to participate in work activities, including looking for work and preparing for work due to her "[e]xtreme social anxiety and fearfulness in the presence of strangers.  Anxiety leading to [decreased] concentration, memory, [decreased] sequential cognitive processing ability, [and] hypersensitivity to criticism or interpersonal conflict."  *Id*.  He stated that Plaintiff had no limitations with lifting/carrying.  Tr. 890.  He opined that Plaintiff's condition was permanent.  *Id*.

The ALJ gave "little weight" to this opinion because Dr. Strosahl offered no explanation for his conclusion and failed to provide a function-by-function breakdown to Plaintiff's mental residual functional capacity.  Tr. 30.  Again,

---

[5]A moderate limitation is defined as a "[s]ignificant in[ter]ference."  Tr. 425.

Plaintiff did not make any challenges to these specific reasons the ALJ provided for rejecting this opinion. *See* ECF No. 15. Therefore, this Court will not consider a challenge to these reasons. *See Carmickle*, 533 F.3d at 1161 n.2.

On April 11, 2013, Dr. Strosahl completed a Mental Residual Functional Capacity Assessment. Tr. 860-862. He opined that Plaintiff had a marked[6] limitation in the abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to travel in unfamiliar places or use public transportation. *Id*. He additionally opined that Plaintiff was moderately[7] limited in the abilities to understand and remember detailed instructions and respond appropriately to changes in a work setting. Tr. 860-861.

The ALJ gave this opinion "little weight" because Dr. Strosahl "clearly considered Plaintiff's subjective complaints of 'severe chronic pain' as a basis for his rating and his determination that she could not work. He was not her medical provider with the credentials to assess the effect of pain on her capacity to work."

---

[6]A marked limitation is defined as "[v]ery significant interference with basic work-related activities i.e., unable to perform the described mental activity for more than 33% of the work day." Tr. 860.

[7]A moderate limitation is defined as "[s]ignificant interference with basic work-related activities i.e., unable to perform the described mental activity for at least 20% of the work day up to 33% of the work day." Tr. 860.

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

Tr. 30. She additionally stated that Dr. Strosahl's clear reliance on Plaintiff's subjective complaints undermined the validity of his assessment. *Id*.

In the comments section of the mental residual functional capacity form, Dr. Strosahl stated, "[t]hese mental deficits are amplified by her severe chronic pain condition. In combination, they make her unable to find and keep a job." Tr. 862. The ALJ relies on this reference to "severe chronic pain" as a basis for her finding that the opinion was based on Plaintiff's self-reports. As a psychologist, Dr. Strosahl arguably has the expertise to judge the effect of pain on Plaintiff's mental function, but his expertise to determine the existence of an impairment that could reasonably cause pain is questionable. Therefore, the ALJ's determination that he relied upon Plaintiff's statements as to the existence of pain is reasonable. Under *Bayliss*, *Tommasetti*, and *Ghanim*, this is a legally sufficient reason to reject Dr. Strosahl's opinion.

Additionally, the ALJ gave "little weight" to all three of Dr. Strosahl's opinions because they were inconsistent with the other evidence in the record. Tr. 30. The ALJ noted that Plaintiff denied any problems with concentration in her reports to the agency and Roland Dougherty, Ph.D. *See* Tr. 30, 365-366, 763-765. Therefore, the ALJ's determination that Dr. Strosahl's opinions regarding limitations in memory and concentration were inconsistent with Plaintiff's statements to the agency and to Dr. Dougherty is supported by substantial evidence. Therefore, this is a legally sufficient reason to reject Dr. Strosahl's opinions.

In conclusion, the ALJ did not error in her treatment of Dr. Strosahl's opinions.

**B.    Res Judicata**

Plaintiff argues that the ALJ erred by applying the underlying principle of *res judicata* and concluding that there was no evidence of worsening of Plaintiff's physical impairment. ECF No. 15 at 12-16.

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

Under *res judicata*, an ALJ's finding that a claimant is not disabled "create[s] a presumption that [the claimant] continued to be able to work after that date." *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). However, the presumption does not apply if there are "changed circumstances." *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). "Changed circumstances" include such differences as an increase in the severity of impairment, a change in age category, or the existence of a new impairment. *Id.*; *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988).

Here, the ALJ acknowledged that *res judicata* did not apply in this case or control her decision because Plaintiff had demonstrated severe mental health impairments that were not present in Plaintiff's initial ALJ decision. Tr. 29. However, the ALJ found "the underlying principle [as] instructive with respect to [Plaintiff's] physical impairments." *Id*. Therefore, the ALJ determined that Plaintiff had not demonstrated a worsening in any of her physical impairments and therefore did not result in any changes in the physical limitations addressed in Plaintiff's residual functional capacity. *Id*.

Plaintiff challenges the ALJ's application of the principle of *res judicata* by arguing that Plaintiff had shown changed circumstances with the new diagnoses of chronic myofascial pain syndrome and fibromyalgia and that Plaintiff's severe mental health impairments resulted in a worsening of Plaintiff's physical impairments. ECF No. 15 at 13-15. Here, the ALJ did not strictly apply *res judicata*, and completed a full analysis of Plaintiff's physical limitations and opinions of medical providers and determined that there was no evidence to support a change in the residual functional capacity determination as to Plaintiff's physical impairments. Tr. 29. The ALJ addressed Plaintiff's back pain and fibromyalgia at step two, finding them not severe. Tr. 23. The ALJ did not error in her conclusion that Plaintiff's physical impairments had not worsened since the ALJ's prior determination.

Additionally, Plaintiff argues that the ALJ should have considered the testimony of Dr. Francis at Plaintiff's prior hearing. ECF No. 15 at 16. However, Dr. Francis' opinion pertains to a period of time that predates the onset date for Plaintiff's current application and is, therefore, of little relevance. *See Carmickle*, 553 F.3d at 1165.

**C.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 15 at 17-20.

It is generally the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039.

> An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.

*Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quotations omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. at 1014-15; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). But "[g]eneral findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible. . ." Tr. 26.  The ALJ supported this determination with the following reasons: (1) Plaintiff made inconsistent statements throughout the record; (2) Plaintiff's alleged symptoms and resulting degree of limitations were inconsistent with her reported activities; and (3) the record suggests Plaintiff was motivated to seek disability for reasons other than her medical conditions.  Tr. 26-27.

Plaintiff argues that these reasons are insufficient under S.S.R. 16-3p and violate regulatory authority.  ECF No. 15 at 19-20.  Defendant responds by asserting that S.S.R. 16-3p took affect after the ALJ's decision and should not be applied retroactively.  ECF No. 16 at14-16.  However, Plaintiff does not argue for the retroactivity of S.S.R. 16-3p; instead she argues that the ALJ violated regulatory authority that was in effect at the time of the ALJ's decision by making a determination regarding Plaintiff's overall character or truthfulness and the adoption of S.S.R. 16-3p is the agency's acknowledgement that ALJs were violating regulatory authority in prior decisions, such as the one currently at issue. *See* ECF No. 15 at 18-20.

On March 16, 2016, S.S.R.16-3p "Evaluation of Symptoms in Disability Claims" became effective, eliminating the term "credibility" from the Social Security Administration's policy, and clarifying "adjudicators will not assess an individual's overall character or truthfulness."  Instead, the "adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id*.  In doing so, the Commissioner noted that ALJs had been following previous sub-regulatory policy that had contained the term "credibility":

> We are rescinding SSR 96-7p: Policy Interpretation Ruling Titles II and XVI Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements and replacing it with this Ruling. We solicited a study and recommendations from the Administrative Conference of the United States (ACUS) on the topic of symptom evaluation. Based on ACUS's recommendations and our adjudicative experience, we are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.

S.S.R. 16-3p.

First, Social Security Rulings issued by the Commissioner do not have the force of law, however reviewing courts will give them some deference because they represent the Commissioner's interpretation of agency regulations. *See* 20 C.F.R. § 402.35(b)(1); *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001). Therefore, Plaintiff's argument that the ALJ's reasons for rejecting her testimony violates S.S.R. 16-3p and, therefore, violates regulatory authority is an incomplete argument. Plaintiff fails to point to a single regulation that the ALJ violated.

Second, S.S.R. 16-3p does not state that S.S.R. 96-7p and the use of the term "credibility" per se violated regulatory authority. Instead, the purpose of the ruling was to "clarify that subjective symptom evaluation [was] not an examination of an individual's character," and instead is an evaluation of the intensity and persistence of reported symptoms to determine how those symptoms limit a claimant's ability to perform work-related activities. S.S.R. 16-3p.

Here, the ALJ did not make a determination as to Plaintiff's overall character or truthfulness. Instead, she applied the test originally set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), and then she evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

which they limit Plaintiff's functioning and she found that Plaintiff's statements regarding intensity , persistence, and limiting effects of her symptoms to be unreliable.  Tr. 25-26.

"The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).  Once a claimant meets the *Cotton* test and there is no affirmative evidence suggesting the claimant is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms for specific, clear and convincing reasons.  *Id.* at 1284.  The *Cotton* test and the ALJ's ability to reject a claimant's testimony regarding the severity of her symptoms is represented in S.S.R. 16-3p: "adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities."

Unlike S.S.R. 16-3p and S.S.R. 96-7p prior to March 16, 2016, the *Cotton* test and the ALJ's ability to reject Plaintiff's testimony regarding her symptoms under the aforementioned cases has the force of law in this circuit and must be followed by this Court.  Upon reviewing the ALJ's determination in light of established Ninth Circuit law, this Court finds that the ALJ did not error in her determination that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely credible."

First, the ALJ determined that Plaintiff made several inconsistent statements regarding her functional abilities at the hearing and in reports to the agency throughout the application process.  Tr. 26.  The Ninth Circuit has held that an ALJ

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

may consider "prior inconsistent statements concerning the symptoms and other testimony by the claimant that appears less than candid" in determining whether a claimant's testimony regarding the severity of her symptoms is credible.[8]  *Smolen*, 80 F.3d at 1284.  Plaintiff does not challenge the ALJ's finding that Plaintiff made inconsistent statements regarding her functional abilities between function reports and hearing testimony.  *See* ECF No. 15.  Therefore, the Court need not address this issue.  *See Carmickle*, 533 F.3d at 1161 n.2.

Second, that ALJ determined that Plaintiff's symptom testimony was inconsistent with activities Plaintiff was performing and reporting to medical providers.  Tr. 26-27.  A claimant's daily activities may support an adverse credibility finding if the claimant's activities contradict her other testimony.  *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).[9]  In a Function Report, Plaintiff stated she could not use her right shoulder, arm, or hand and she denied any social activities.  Tr. 365-366.  In the medical records, Plaintiff reported to providers that she was cleaning out a burned out apartment, Tr. 627, she was injured at a barbeque, Tr. 436, she had been injured when a desk was

---

[8]S.S.R. 16-3p also instructs adjudicators to consider the consistency of a claimant's statements:

> We will consider statements an individual made to us at each prior step of the administrative review process, as well as statements the individual made in any subsequent or prior disability claims under titles II and XVI.  If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record, we will determine that an individual's symptoms are more likely to reduce his or her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner.

[9]S.S.R. 16-3p also instructs the ALJ to consider Plaintiff's reported daily activities.

ORDER GRANTING DEFENDANT'S MOTION . . . - 19

dropped on her foot, Tr. 883, and she was researching her impairments on the internet, Tr. 811.  At the hearing, Plaintiff stated that she used her non-dominant hand to sweep the burnt out apartment, the barbeque was at her own home, she was not carrying the desk when it was dropped on her, and she had others type for her during the internet searches.  Tr. 97-100, 104.  Despite her explanations for her activities at the hearing, the ALJ found that she was doing more in her daily activities than she was alleging.  Tr. 26-27.  Plaintiff argues that due to her explanations provided at the hearing, the record does not support the ALJ's conclusions, however Plaintiff's testimony is only part of the evidentiary body being considered.  A reading of Plaintiff's statements on her function reports compared to her statements to providers, it appears that some evidence supports the ALJ's conclusion that Plaintiff's activities do not match her reported limitations.  In situations where there is evidence both for and against the ALJ's conclusion, this Court will not disturb the ALJ's findings.  *See Tackett*, 180 F.3d at 1097.

Third, the ALJ rejected Plaintiff's testimony regarding the severity of her symptoms because she had nonmedical motivations for seeking disability.  Tr. 27.  An ALJ may rely on a Plaintiff's secondary motive in seeking disabilities benefits when evaluating testimony regarding the severity of Plaintiff's symptoms.  *Matney O.B.O Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).  Here, the ALJ noted that despite Plaintiff's statements that she could not care for her daughter, Tr. 110-111, she made other statements indicating she was her primary caregiver.  *See* Tr. 27, 780, 843, 960.  The ALJ determined that Plaintiff had nonmedical motivations to qualify for benefits: "Her responsibilities at home provide additional motivation to obtain benefits so she can augment the family income while remaining home to continue caring for them."  Tr. 27.  Here, Plaintiff's testimony is not that she cannot provide essential care for her daughter, but that she cannot be the mother she wishes to be:  "I cry a lot because I can't do the things I want to do with my daughter.  I can't be that person that imagined myself to be."

Tr. 110-111.  Therefore, the ALJ's determination that Plaintiff had nonmedical motivation to obtain benefits is not supported by substantial evidence.  However, any error resulting from this rationale is harmless error as the ALJ provided the above legally sufficient reasons to reject Plaintiff's symptom statements.  *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

As such, this Court will not disturb the ALJ's credibility determination.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED October 26, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE